J-S01024-17 & J-S01025-17

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| IN RE: ADOPTION OF: K.P., A MINOR, | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| APPEAL OF: W.T.B., JR., | |
| | No. 1420 MDA 2016 |

Appeal from the Decree entered July 27, 2016,
in the Court of Common Pleas of Franklin County,
Orphans' Court at No(s): 32 ADOPT 2016.

| | |
|---|---|
| IN RE: ADOPTION OF: R.B., A MINOR, | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| APPEAL OF: W.T.B., JR., FATHER | |
| | No. 1421 MDA 2016 |

Appeal from the Decree entered July 27, 2016,
in the Court of Common Pleas of Franklin County,
Orphans' Court at No(s): 31 ADOPT 2016.

| | |
|---|---|
| IN RE: ADOPTION OF: B.B., A MINOR, | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| APPEAL OF: W.T.B., JR., | |
| | No. 1422 MDA 2016 |

Appeal from the Decree entered July 27, 2016,
in the Court of Common Pleas of Franklin County,
Orphans' Court at No(s): 30 ADOPT 2016.

| | |
|---|---|
| IN THE INTEREST OF: K.P., A MINOR, | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| APPEAL OF: W.T.B., JR., | |
| | No. 1423 MDA 2016 |

Appeal from the Order entered July 27, 2016,
in the Court of Common Pleas of Franklin County,
Juvenile Division, at No(s): CP-28-DP-0000054-2015.

| | |
|---|---|
| IN THE INTEREST OF: R.B., A MINOR, | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| APPEAL OF: W.T.B., JR., FATHER | |
| | No. 1424 MDA 2016 |

Appeal from the Order entered July 27, 2016,
in the Court of Common Pleas of Franklin County,
Juvenile Division, at No(s): CP-28-DP-0000065-2014.

| | |
|---|---|
| IN THE INTEREST OF: B.B., A MINOR, | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| APPEAL OF: W.T.B., JR., | |

No. 1425 MDA 2016

Appeal from the Order entered July 27, 2016,
in the Court of Common Pleas of Franklin County,
Juvenile Division, at No(s): CP-28-DP-0000064-2014.

BEFORE:  GANTMAN, P.J., DUBOW and MUSMANNO, JJ.

MEMORANDUM BY DUBOW, J.:                    **FILED MARCH 02, 2017**

In these consolidated appeals, W.T.B., Jr., ("Father") challenges the Order changing the permanency goal from reunification to adoption, and the Decree involuntarily terminating his parental rights to his three daughters, K.P. (born February 2015), R.B. (born February 2013), and B.B. (born July 2011), pursuant to the Adoption Act, 23 Pa.C.S. § 2511(a) and (b).  We affirm.

**SUMMARY OF FACTS AND PROCEDURAL HISTORY**

Father and C.P. ("Mother")[1] are the natural parents of the three children at issue.  Mother has been in and out of incarceration since August 2014.  Their children, B.B. and R.B., had resided with extended family or family friends until October 1, 2014, when they were placed in the temporary legal and physical custody of the Franklin County Child and Youth Service ("the Agency") after being brought to the Agency by their maternal

_____

[1] The Orphans' Court also terminated Mother's parental rights.  Only Father's appeal is now before this Court.

grandmother who was unable to care for them. Attempts to contact Father were unsuccessful.

B.B. and R.B. were adjudicated dependent on December 9, 2014, and have remained in the Agency's custody. At the time of their placement, Mother was pregnant with K.P. Upon her birth, K.P. was admitted to a local hospital to receive treatment to assist her in withdrawing from methadone. K.P. was ultimately discharged from the hospital to the care of her parents. The Agency became aware, however, that neither Mother nor Father was caring for K.P.; rather, extended family members were caring for her. On June 24, 2015, the Agency conducted a home visit with K.P.'s then caretaker, Mother's sister. Mother's sister informed the Agency that she could no longer care for K.P. Following unsuccessful attempts to contact Mother or Father, an emergency Order was entered that same day, placing K.P. in the Agency's care. On August 21, 2015, K.P. was adjudicated dependent, and has remained in the Agency's custody.

As a result of the adjudication hearings for all three children, as well as subsequent permanency hearings, certain goals were established for Father. He was to: (1) participate in a Parental Fitness Assessment and follow the recommendations; (2) participate in a drug and alcohol evaluation and any recommended treatment; (3) participate in individual therapy including anger management services; (4) obtain and maintain stable housing; (5) obtain and maintain financial stability; (6) maintain consistent visitation; (7)

refrain from further criminal activity; and (8) to comply with the terms of his probation and parole.[2]

On May 25, 2016, the Agency filed a petition for involuntary termination of parental rights ("TPR Petition"), as to both Mother and Father, pursuant to 23 Pa.C.S. § 2511(a)(1), (2), (5), and (8). At the same time, in the dependency action, the Agency requested a change in the permanency goal from reunification to adoption. The Orphans' Court held an evidentiary hearing on July 26, 2016. The Agency presented the testimony of a counselor for B.B. and R.B, and one of its caseworkers involved with all three children. In addition, the Agency moved for admission of multiple exhibits into evidence. Both Mother and Father presented their own testimony.

At the close of this hearing, the Orphans' Court took the matter under advisement. By Order and Decree entered July 27, 2016, the court changed goal for all three children to adoption, and terminated Mother's and Father's parental rights pursuant to Sections 2511(a)(2), (5), (8), and 2511(b).

**ISSUES ON APPEAL**

Father raises the following issues on appeal:

> The [Orphans'] court erred in terminating parental
> rights and changing the goal to adoption as Father has

_____

[2] On June 15, 2012, both Mother and Father pled guilty to recklessly endangering another person following an incident that occurred while B.B. was in their care.

> substantially remedied the condition that led to placement of the children in that he had obtained appropriate housing for the children.

Father's Brief at 4.

Because evidence regarding the permanency plan goal change and TPR petitions substantially overlap, and the legal standards to be applied are the same, we will first address Father's termination issue. *See In the Interest of R.J.T.*, 9 A.3d 1179, 1191 n.14 (Pa. 2010) (noting that courts should combine hearings on these two petitions since the evidence substantially overlaps and allows for faster permanency for the child).

**LEGAL ANALYSIS**

The standard of review in termination of parental rights cases requires appellate courts "to accept the findings of fact and credibility determinations of the trial court if they are supported by the record." *In re Adoption of S.P.*, 47 A.3d 817, 826 (Pa. 2012). "If the factual findings are supported, appellate courts review to determine if the trial court made an error of law or abused its discretion." *Id.* We may reverse a decision based on an abuse of discretion only upon demonstration of "manifest unreasonableness, partiality, prejudice, bias, or ill-will." *Id.* We may not reverse, however, merely because the record would support a different result. *Id.* at 827.

We give great deference to trial courts that often have first-hand observations of the parties spanning multiple hearings. *In re T.S.M.*, 71 A.3d 251, 267 (Pa. 2013). The Orphans' Court is free to believe all, part, or none of the evidence presented and is likewise free to make all credibility

determinations and resolve conflicts in the evidence. ***In re M.G.***, 855 A.2d 68, 73-74 (Pa. Super. 2004). In addition, in order to affirm the termination of parental rights, this Court need only agree with any one subsection under Section 2511(a). ***See In re B.L.W.*** 843 A.2d 380, 384 (Pa. Super. 2004) (*en banc*).

The burden is upon the petitioner to prove by clear and convincing evidence that the asserted grounds for seeking the termination of parental rights are valid. ***In re R.N.J.***, 985 A.2d 273, 276 (Pa. Super. 2009). We have explained that "[t]he standard of clear and convincing evidence is defined as testimony that is so clear, direct, weighty and convincing as to enable the trier of fact to come to a clear conviction, without hesitance, of the truth of the precise facts in issue." ***Id.*** (citations omitted).

**Termination Pursuant to 2511(a)(2)**

Under Section 2511(a)(2), "the petitioner for involuntary termination must prove (1) repeated and continued incapacity, abuse, neglect or refusal; (2) [that] such incapacity, abuse, neglect or refusal caused the child to be without essential parental care, control or subsistence; and (3) [that] the causes of the incapacity, abuse, neglect or refusal cannot or will not be remedied." ***In re A.S.***, 11 A.3d 472, 479 (Pa. Super. 2010) (citation omitted).

This Court has defined "parental duties" in general as the obligation to affirmatively and consistently provide safety, security and stability for the child:

There is no simple or easy definition of parental duties. Parental duty is best understood in relation to the needs of a child. A child needs love, protection, guidance, and support. These needs, physical and emotional, cannot be met by a merely passive interest in the development of the child. Thus, this Court has held that the parental obligation is a positive duty which requires affirmative performance. This affirmative duty … requires continuing interest in the child and a genuine effort to maintain communication and association with the child. Because a child needs more than a benefactor, parental duty requires that a parent exert himself to take and maintain a place of importance in the child's life.

*In re Z.S.W.*, 946 A.2d 726, 730 (Pa. Super. 2008) (citations omitted). "Where the parent does not exercise reasonable firmness in declining to yield to obstacles, his parental rights may be forfeited." *A.S.*, 11 A.3d at 481 (citation omitted).

And most importantly, "parental rights are not preserved by waiting for a more suitable or convenient time to perform one's parental responsibilities while others provide the child with her physical and emotional needs." *In re B., N.M.*, 856 A.2d 847, 855 (Pa. Super. 2004) (citations omitted).

In the instant case, the Orphans' Court properly concluded that the Agency met all three elements of Section 2511(a)(2). It reasoned:

After consideration of the record . . . it is clear Father's neglect meets the "repeated and continued" standard of Section 2511(a)(2). At the time of filing, over one (1) year since K.P.'s placement and nearly (2) years since B.B. and R.B.'s placement have passed. However, at no time during those placements has Father maintained consistent visitation with the girls, obtained independent housing, completed intensive in-home parenting education, or

completed drug and alcohol treatment. In essence, Father has consistently maintained his inconsistency in parenting for the duration of the girls' placements. Thus, Father has "repeated[ly] and continu[ously]" neglected his children.

Having established the first element, the Agency easily met the second—that the neglect left "the child . . . without essential care, control or subsistence." Father's neglect has left the children without a stable home. Providing stable and adequate housing is perhaps one of the most essential requirements of caring for one's children. Here, Father has been unable to provide even this most basic need for his children. Father's failure to maintain consistent visitation also reflects on his ability to provide his children with emotional support and stability, and has left the girls without any real sense of emotional care. Furthermore, Father's failure to complete, and repeated discharge from, intensive in-home parenting classes indicate to this Court that Father is not prepared to meet the level of parental care expected of a custodial parent.

Finally, Father's failure to [comply] or significant delay in complying with the majority of the Court's orders, despite services made available to him by the Agency, further demonstrate that the likelihood of remedying the underlying conditions "within a reasonable period of time" is minimal at best. Thus, the Agency has met the requirement of unlikely remediation under Section 2511(a)(2).

Orphan's Court Opinion, 9/28/16, at 19-20 (citations omitted).

Father argues that the Orphans' Court erred in terminating his parental rights and changing the goal to adoption with regard to his three children because he "has complied with all of [the] directives in the adjudication order." Father's Brief at 7. As to the goal of stable housing, Father asserts that "[i]t has [taken] him longer to maintain stable housing for the children as he was unable to realize his goal of obtaining his own

home. However, he has obtained stable housing with the paternal grandfather." *Id.* at 9.

The Orphans' Court found no merit to this contention, and explained its rationale as follows:

> [Father's] argument fails to persuade this Court for a number of reasons. First, this Court finds that Father has failed to adequately demonstrate he has remedied the lack of appropriate housing for the girls. The proposed housing—moving the girls into his father's residence with him—is problematic. Not only did Father originally report that the housing was inadequate due to space concerns, but also at a later date when he reported his home as a resource, he still lacked the necessary supplies and a feasible babysitting plan.

Orphans Court Opinion, 9/28/16, at 20 (citations omitted).

The Orphans' Court then cited the following passage from **A.S.**, *supra*:

> Unlike subsection (a)(1), subsection (a)(2) does not emphasize a parent's refusal or failure to perform parental duties, but instead emphasizes the child's present and future need for essential parental care, control or subsistence necessary for his physical or mental well-being. Therefore, the language in subsection (a)(2) should not be read to compel courts to ignore a child's need for a stable home and *strong, continuous parental ties,* which the policy of restraint in state intervention is intended to protect. This is particularly so where disruption of the family has already occurred and there is not reasonable prospect for reuniting it. . . . Further, grounds for termination under subsection (a)(2) are not limited to affirmative misconduct; those grounds may include acts of incapacity to perform parental duties.

*A.S.*, 11 A.3d at 481 (citation omitted). The court concluded that "[c]onsideration of this case's facts in light of the above legal tenets compels this Court to terminate Father's parental rights." Orphan's Court Opinion, 9/28/16, at 21. In doing so, the Orphans' Court concluded that Father has "no concrete plan for fulfilling his children's need for a stable home." *Id.* (citing *A.S.*, *supra*).

Our review of the record supports the Orphans' Court's conclusion regarding Father's steps toward obtaining stable housing for the children. It was for the Orphans' Court, as a matter of credibility, to determine the weight to be given Father's attempts at remediation. *In re M.G.*, *supra*. Moreover, our review of the record supports the Orphans' Court's conclusion that, even if Father had obtained appropriate housing, his failure to substantially fulfill his other goals, would still mandate the termination of his parental rights. The Orphans' Court explained:

> Father's attempt at rectifying the underlying conditions which initiated the placements exists in the form of mere promises, and is bereft of any real substantial action indicative of an ability or commitment to the care and parental responsibility of his three small children.
>
> Assuming arguendo that this Court found Father has indeed obtained appropriate housing for the girls, that finding alone would not be enough to preclude termination of Father's parental rights. This Court is cognizant of the fact that housing alone cannot constitute grounds for termination. However, the conditions requiring Father's remedial efforts go beyond housing concerns. In addition to the Court's order to obtain and maintain stable housing, Father was also ordered to participate in a Parental Fitness Assessment and follow the recommendations, participate in a drug and alcohol evaluation and any recommended

treatment, participate in individual therapy including anger management services, obtain and maintain financial stability, maintain consistent visitation, refrain from further criminal activity, and comply with the terms of his probation/parole[.] The Parental Fitness Assessment resulted in the recommendation that Father strengthen his parenting skills by maintaining consistent visitation, and participate in regular an intensive in-home parenting education. Father has not only failed to obtain and maintain stable housing; he has failed to complete his drug and alcohol treatment, failed to maintain consistent visitation, and failed to complete intensive in-home parenting education. Thus, even if this Court were to find that Father had obtained adequate housing for the girls as Father alleges, his remaining failures to comply with this Court's orders are enough to support the termination of his parental rights.

Father's failure to [comply] or significant delay in complying with the majority of the Court's orders indicates his unwillingness to remedy the conditions which led to his daughters' placements—meeting the final requirement of Section 2511(a)(2). Having provided evidence that Father has "repeated[ly] and continu[ously]" neglected his three children, which left them "without essential parental care, control, or subsistence", and that his neglect is unlikely to be remedied, the Agency has satisfied all three requisite elements of Section 2511(a)(2).

Orphans' Court Opinion, 9/2/16, at 21-22 (citations omitted).

We agree. Our review confirms that, while superficially, Father has complied with his court-ordered goals, he has not followed through to such a degree that he could adequately parent the three children within a reasonable time. Therefore, for all of the reasons stated above, the Agency has proven by clear and convincing evidence that termination of parental rights to B.B., R.B., and K.P. is justified pursuant to Section 2511(a)(2) of the Adoption Act.

- 12 -

Accordingly, the court did not abuse its discretion in terminating Father's parental rights pursuant to 23 Pa.C.S. § 2511(a)(2), and we need not consider the other bases for termination under this section. **See B.L.W.**, **supra**.

**Termination Pursuant to Section 2511(b)**

Father presents no argument with regard to Section 2511(b). Nevertheless, we also agree with the Orphans' Court's determination that the Agency met its burden under 23 Pa.C.S. § 2511(b), and that terminating Father's parental rights is in the best interest of the children.

With respect to Section 2511(b), our analysis shifts focus from parental actions in fulfilling parental duties to the effect that terminating the parental bond will have on the child. Section 2511(b) "focuses on whether termination of parental rights would best serve the developmental, physical, and emotional needs and welfare of the child." **In re: Adoption of J.M.**, 991 A.2d 321, 324 (Pa. Super. 2010).

In **In re C.M.S.**, 884 A.2d 1284, 1287 (Pa. Super. 2005), this Court found that "intangibles such as love, comfort, security, and stability are involved in the inquiry into the needs and welfare of the child." In addition, the orphans' court must also discern the nature and status of the parent-child bond, with utmost attention to the effect on the child of permanently severing that bond. **Id.**

In cases where there is no evidence of a bond between a parent and a child, it is reasonable to infer that no bond exists. **In re K.Z.S.**, 946 A.2d

- 13 -

753, 762-63 (Pa. Super. 2008). Thus, the extent of the bond-effect analysis necessarily depends on the circumstances of the particular case. *Id.* at 763.

In the instant case, the Orphans' Court determined that the evidence presented at the TPR hearing established that termination of Father's parental rights was in the best interests of the children. The court found that no real parent-child relationship existed, that the foster parents have consistently provided for the children's needs, and that the children have more of a parental bond with the foster parents than with their biological parents. Citing to the testimony presented at the hearing, the Orphans' Court explained:

> As indicated by the above facts, Father has been offered predominately weekly visitation for the duration of his girls' placements. Despite this limited opportunity to see his children, Father has missed or cancelled these visits on a number of occasions. Thus typically, the girls spend just a few hours out of the entire week with their natural father. Initially, Father was given the opportunity for extra visitation with girls at the foster family's home to learn their daily routines. However, Father's tardiness and behavior during these visits resulted in disruption of the girls' bedtime routines and ultimately resulted in discontinuation of the visits.
>
> Further, when visits do occur, Father tends to take on the role of playmate rather than parent. The Court heard testimony at the hearing from a [caseworker] from the Agency who worked closely with this family for nearly two years. The [caseworker] testified that she did not believe that a parent-child relationship exists in this case, or at least not one that the children recognize. She based this opinion on interactions she observed between Father and the girls, as well as the way the visits have been going. Specifically, the children have not regularly seen either of their natural parents, and don't understand what kind of

- 14 -

relationship they have with them. Perhaps most significantly, the inconsistent visitation between Father and the girls seems to be causing the girls anxiety. The girls are naturally confused about what is going on, and at their young ages do not know how to express their emotions.

Father has also been absent or unaware of the girls' needs. For example, at the time of B.B. and R.B.'s placement, Father was not aware of the girls' recent medical history, and throughout their placement it has been the foster parents, not Father, who takes the girls to the doctor. It is the foster parents who have established the girls' everyday routines, who take them to school and to doctor appointments, and who are reliably there for them day in and day out.

All three girls deserve consistency and permanency, which Father has hitherto failed to provide. This Court does not question Father's love for his children. However, love alone is not enough to dissuade this Court from terminating parental rights. Like all children, these three girls require protection, attention, and care. For the majority of these girls' lives, these needs have been met by their foster parents, rather than their natural parents.

In consideration of the "nature and status of the emotional bond between [Father] and [the] child[ren]", it seems that the present relationships are tenuous at best. The evidence presented at the hearing demonstrates that the relationship the girls share with their foster parents appears stronger than with their natural parents, and more closely resembles that of a traditional parent-child relationship. This Court is persuaded that the "love, comfort, security, and stability the child[ren] might have with" their foster parents outweighs any existing emotional bond they have developed with [Father]. Their needs and welfare dictate the termination of Father's parental rights, so that they may establish a more secure and stable quality of life.

While this Court takes no pleasure in severing parent-child relationships through the termination of parental rights, it nevertheless must carry out its duty to decide in favor of the children's best interest. In the instant case, this Court

finds that the best interest of the children requires a termination of Father's parental rights.

Orphans' Court Opinion, 9/2/16, at 27-29 (citations and footnote omitted).

**GOAL CHANGE**

Finally, given the above, we conclude that the Orphans' Court did not err in changing the children's permanency goal to adoption. *See R.J.T.*, 9 A.3d at 1183-84 (noting that when considering a goal change motion the court looks to the bests of the child rather than those of the child's parents; the Agency must establish that its requested goal change option is best suited to the child's safety, protection, and physical, mental, and emotional welfare).

**CONCLUSION**

In sum, our review of the record supports the Orphans' Court's order concluding that the Agency met its statutory burden regarding the permanency plan goal change for children to adoption, and its burden of proving by clear and convincing evidence that Father's parental rights should be terminated pursuant to 23 Pa.C.S. §§ 2511(a)(1) and 2511(b). Accordingly, we affirm.

Order and Decree affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 3/2/2017